

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: April 12, 2019**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **PERCY A. SEABERRY,** | **CASE NO. 17-04570-NPO** |
| **DEBTOR.** | **CHAPTER 13** |
| **PERCY A. SEABERRY** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. 18-00044-NPO** |
| **CENLAR FSB, CMG MORTGAGE, INC., AND SNL COMPANY** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' AMENDED MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

This matter came before the Court for hearing on March 6, 2019 (the "Hearing"), on the

Defendants' Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

(the "Amended Motion to Dismiss") (Adv. Dkt. 61)[1] filed by Cenlar FSB ("Cenlar") and CMG

Mortgage, Inc. ("CMG"); the Memorandum in Support of Amended Motion to Dismiss, or in the

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-referenced adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. __)"; and (2) citations to docket entries in the above-reverenced bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. __)".

Alternative, Motion for Summary Judgment (the "Cenlar/CMG Brief") (Adv. Dkt. 62) filed by Cenlar and CMG; the Joinder in Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (the "SNL Joinder in Amended Motion to Dismiss") (Adv. Dkt. 63) filed by SNL Company, LLC ("SNL"); the Memorandum in Support of Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (the "SNL Brief") (Adv. Dkt. 64) filed by SNL; the Plaintiff's Response to Defendants' Amended Motion to Dismiss or in the Alternative for Summary Judgment (the "Response to Amended Motion to Dismiss") (Adv. Dkt. 66) filed by the debtor, Percy A. Seaberry (the "Debtor"); the Plaintiff's Memorandum of Authorities in Support of his Response to Defendants' Amended Motion to Dismiss or in the Alternative for Summary Judgment (the "Debtor's Brief") (Adv. Dkt. 67) filed by the Debtor; and the Reply Memorandum in Support of Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (the "Reply in Support of Amended Motion to Dismiss") (Adv. Dkt. 68) filed by Cenlar and CMG in the Adversary.  Cenlar and CMG attached exhibits to the Amended Motion to Dismiss that were not filed by the Debtor with the Amended Complaint Seeking to Set Aside Foreclosure (the "Amended Complaint") (Adv. Dkt. 60), including the Declaration of Jeffrey Stanley (the "Stanley Declaration") (Adv. Dkt. 61-1) and the Declaration of Elizabeth Crowell Price (the "Price Declaration") (Adv. Dkt. 61-2).  They attached these same documents to the Cenlar/CMG Brief. (Adv. Dkt. 62-3; Adv. Dkt. 62-5).[2]  The Debtor did not attach any exhibit to the Response to Amended Motion to Dismiss or to the Debtor's Brief but relied on the exhibits filed previously with the Amended Complaint.  (Adv. Dkt. 60-1; Adv. Dkt. 60-2).

---

[2] Some of the documents attached to the CMG/Cenlar Brief are duplicates.  For example, the Pre-Foreclosure Notice docketed at Adv. Dkt. 62-2 is also docketed as Exhibit A to the Stanley Declaration at Adv. Dkt. 62-3.  This Opinion cites to the exhibits attached by Cenlar and CMG to the Stanley Declaration and the Price Declaration as part of the Cenlar/CMG Brief, and to the exhibits attached by the Debtor to the Amended Complaint.

At the Hearing, Louise Harrell represented the Debtor; Erin Saltaformaggio and Elizabeth Crowell Price ("Price") represented Cenlar and CMG, and Joshua C. Lawhorn represented Harold J. Barkley, Jr., the chapter 13 trustee (the "Trustee"). No one appeared at the Hearing on behalf of SNL.

## Jurisdiction

The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. The cause of action in the Amended Complaint that alleges a violation of the automatic stay is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Bankruptcy judges have the authority to enter final orders and judgments in all core proceedings. 28 U.S.C. § 157(b)(1). The remaining causes of action in the Amended Complaint are non-core, or "otherwise related to" proceedings. The parties have consented to entry of final orders and judgments by this Court on the non-core claims. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015); MISS. BANKR. L.R. 7008-1. The Court, therefore, has the authority to enter a final order and judgment on all causes of action in the Amended Complaint. Notice of the Amended Motion to Dismiss and the SNL Joinder in Amended Motion to Dismiss was proper under the circumstances.

## Facts[3]

For reasons discussed later in this Opinion, the Court treats the Amended Motion to Dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").[4] Under Rule 56, the Court generally views the evidence and inferences in the light

---

[3] The following findings of fact and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[4] Rule 56 is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure

most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

On October 18, 2013, the Debtor purchased a home located at 258 Sun Drive, Jackson, Mississippi (the "Property"). To finance the purchase, the Debtor signed a promissory note (the "Note") (Cl. #6-1 at 11-13) in the original principal amount of $68,732.00 in favor of CMG. The Debtor agreed to repay the loan in monthly installments of $491.35 with a maturity date of November 1, 2028. (Cl. #6-1 at 11).

Repayment of the Note was secured by a deed of trust (the "Deed of Trust") (Adv. Dkt. 60-1) on the Property. Under paragraph 9 of the Deed of Trust, the Debtor would be considered in default if he failed to pay any monthly payment in full, in which event CMG could accelerate the loan balance. Upon acceleration of the loan balance, paragraph 18 authorized CMG to sell the Property "in the manner prescribed by applicable law," but CMG first had to give notice of the foreclosure sale to the Debtor pursuant to paragraph 13. The acceleration, notice, and power-of-sale provisions in paragraphs 9, 13, and 18 of the Deed of Trust provide, as follows:

> **9.    Grounds for Acceleration of Debt.**
> **(a)    Default.**  Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>> (i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
>> (ii)    Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
>
> **13.    Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this

Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**18.     Foreclosure Procedure.**   If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law.   Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in paragraph 13, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law.   Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in HINDS County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines.   Lender or its designee may purchase the Property at any sale.

(Adv. Dkt. 60-1 at 4-7).

The Debtor defaulted on his monthly payments.   On July 17, 2017, CMG mailed the Debtor a letter titled "Pre-Foreclosure Notice" (Adv. Dkt. 62-3 ¶ 3), informing the Debtor of the amount due to "cure the default or reinstate your loan" and alternatives to foreclosure.   "The holder of the mortgage, deed of trust or other lien on our property has the right to begin the process of foreclosing on the debt and may sell your property at public auction to satisfy the debt at any time after forty-five (45) days from the date of this notice."   (Adv. Dkt. 62-3 at 3); *see* MISS. CODE ANN. § 81-18-55(f).   Jeffrey Stanley stated in the Stanley Declaration that as vice president of document execution for CMG, he is "familiar with how CMG services its mortgage loans and how it maintains its records."[5]   (Adv. Dkt. 62-3 ¶ 2).   His testimony authenticated the Pre-Foreclosure Notice.

CMG thereafter retained a law firm, Dean Morris, L.L.C. ("Dean Morris"), to act as its agent in conducting a non-judicial foreclosure sale of the Property.   (Adv. Dkt. 62-5 at 1).   On

---

[5] The terms "deed of trust" and "mortgage" are not synonymous, but for purposes of the issues presented here, the terms are used interchangeably.

October 9, 2017, Dean Morris mailed the Debtor a letter titled "Notice Pursuant to the Fair Debt Collection Practices Act" (the "FDCPA Notice") (Adv. Dkt. 62-5, Ex. A at 3-4), that said CMG had instructed the law firm "to institute a foreclosure to enforce the security interest" and that Dean Morris intended "to initiate foreclosure before the expiration of the 30-day period." The FDCPA Notice also informed the Debtor that he owed CMG $58,103.09. (Adv. Dkt. 62-5 ¶ 2). The FDCPA Notice purported to provide notice "to the extent that existing or future . . . judicial decisions . . . might subject such proceedings to the provisions of the Fair Debt Collection Practices Act."[6] (Adv. Dkt. 62-5, Ex. A at 3). Price stated in the Price Declaration that she is an attorney at Dean Morris and that Dean Morris mailed the FDCPA Notice to the Debtor. Her testimony authenticated the FDCPA Notice.

There is no evidence in the record that either the Debtor or his counsel responded to the Pre-Foreclosure Notice or the FDCPA Notice to dispute the amount of the loan balance or to attempt to reinstate the Note by paying the mortgage arrearage in lump sum. (Adv. Dkt. 60-1 ¶ 10). Instead, the Debtor filed a voluntary petition for relief (Bankr. Dkt. 1) under chapter 13 of the Bankruptcy Code on December 12, 2017.

The commencement of the Bankruptcy Case imposed an automatic stay on "any act to collect, assess, or recover" a pre-petition claim against the Debtor. 11 U.S.C. § 362(a)(6). The day after the Debtor commenced the Bankruptcy Case, December 13, 2017, the "Loan Workout Department" of CMG sent the Debtor's counsel a letter informing her "that notwithstanding the bankruptcy" of the Debtor, "there may be relief available to help [him] avoid foreclosure" (the

---

[6] In *Obduskey v. McCarthy & Holthus, LLP*, No. 17,1307, 2019 WL 1264579 (Mar. 20, 2019), rendered after the date of the FDCPA Notice, the U.S. Supreme Court held that a law firm engaged to conduct a nonjudicial foreclosure proceeding is not a "debt collector" subject to the main coverage of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.

"December 13, 2017 Letter") (Adv. Dkt. 62-3 ¶ 4; Adv. Dkt. 60-2). CMG asked Debtor's counsel to relay to the Debtor the following three options: (1) loan modification; (2) sale of the Property (if the value of the Property did not exceed the amount of the outstanding debt); and (3) deed in lieu of foreclosure. If the Debtor wished "to pursue one of these options prior to the discharge or dismissal of the bankruptcy," CMG asked Debtor's counsel to return a completed "Uniform Borrower Assistance Form" and provide certain financial documents, including the Debtor's pay stub, a bank statement, and last year's filed tax return. (Adv. Dkt. 60-2). CMG also asked the Debtor's counsel to provide it with a copy of the "Chapter 13 plan with Schedules A, D, I and J." (*Id.*).

On January 9, 2018, the Debtor filed his bankruptcy schedules in which the Debtor listed CMG as having a secured claim of $58,087.00. (Bankr. Dkt. 13 at 11). In his initial chapter 13 plan (the "Proposed Plan") (Bankr. Dkt. 15), the Debtor proposed to pay the Trustee monthly plan payments of $1,020.00 and—invoking the statutory cure mechanism provided in 11 U.S.C. § 1322(b)(5)—the Debtor proposed to pay CMG $104.00 per month toward the mortgage arrearage and $867.00 per month in ongoing mortgage payments. The term of the Proposed Plan was sixty (60) months.

On January 17, 2018, Cenlar filed the Objection to Confirmation of Chapter 13 Plan (Bankr. Dkt. 19), alleging that the Deed of Trust had been assigned to Cenlar and that the Proposed Plan incorrectly reflected the amount of the mortgage arrearage. On February 15, 2018, Cenlar filed a proof of claim in the amount of $60,261.10 (the "Proof of Claim") (Cl. #6-1).

After the 11 U.S.C. § 341 meeting of creditors, the Trustee questioned the financial feasibility of the Proposed Plan based on the amount of the Debtor's income as reflected in his

bankruptcy schedules.  (Hr'g at 10:36:09-10:37:48 (Mar. 6, 2019);[7] Bankr. Dkt. 13 at 19-22).

Thereafter, the Trustee and the Debtor agreed that if the Debtor became sixty (60) days or more

delinquent in his chapter 13 plan payments, calculated from the first day of the first delinquent

month, the Bankruptcy Case could be dismissed without further notice or hearing.  The Court[8]

entered the Agreed Order (Bankr. Dkt. 23) to that effect on February 7, 2018.

Cenlar and the Debtor resolved Cenlar's objection to the Proposed Plan, and on March 13,

2018, the Court entered the Agreed Order (Bankr. Dkt. 34), amending the Proposed Plan to include

the amount of the ongoing monthly mortgage payment and mortgage arrearage set forth by Cenlar

in the Proof of Claim.  The resolution of Cenlar's objection removed the last obstacle to

confirmation, and the Court entered an order confirming the Debtor's amended chapter 13 plan

(the "Confirmed Plan") (Bankr. Dkt. 43) on March 29, 2018.  Under the Confirmed Plan, the

Debtor agreed to pay the Trustee $1,243.50 per month in plan payments, cure the pre-petition

mortgage arrearage of $9,147.38, and maintain ongoing mortgage payments of $795.53 per

month.[9]

The Debtor became delinquent in his plan payments for more than sixty (60) days.  In

accordance with the previous agreement reached with the Debtor, the Trustee submitted the Final

Order of Dismissal (the "Dismissal Order") (Bankr. Dkt. 47), which the Court entered on April 16,

2018.  Before the dismissal of the Bankruptcy Case, the Trustee received no plan payments and,

---

[7] None of the hearings held in the Adversary were transcribed.  Citations are to the timestamp of the audio recordings.

[8] The Bankruptcy Case originally was assigned to Bankruptcy Judge Edward Ellington.  On December 1, 2018, the Bankruptcy Case and all related proceedings were transferred to the over-signed.

[9] The ongoing monthly mortgage payment of $795.53 consisted of $491.35 in principal and interest, $274.42 in escrow, and $29.76 in private mortgage insurance.  (Cl. #6-1 at 4).

therefore, made no distributions to Cenlar or any other creditor.  (Hr'g at 10:36-09-10:37:48 (Mar. 6, 2019)).

On April 17, 2018, the Debtor filed the Debtor's Motion to Reinstate (Bankr. Dkt. 49), which the Court set for a hearing on May 21, 2018 (the "Reinstatement Hearing").  On April 23, 2018, the Trustee filed the Trustee's Response to Debtor's Motion to Reinstate (Bankr. Dkt. 54), alleging that the Debtor was delinquent in plan payments in the amount of $2,289.50 through April 2018 and arguing that the Debtor should be required to pay the delinquency before any reinstatement of the Bankruptcy Case.  The Trustee and the Debtor thereafter reached an agreement to reinstate the Bankruptcy Case, subject to the Debtor bringing the plan payments current.  As a result, the Reinstatement Hearing was cancelled, but the Agreed Order (the "Reinstatement Order") (Bankr. Dkt. 58) reinstating the Bankruptcy Case was not submitted to the Court until approximately June 4, 2018.  The Reinstatement Order was not entered until June 4, 2018, because of the Debtor's delay in bringing the plan payments current.  (Hr'g at 10:22:42-10:23:41 (Mar. 6, 2019)).

After the dismissal of the Bankruptcy Case and while the Motion to Reinstate was pending, Dean Morris resumed foreclosure proceedings.  On May 2, 2018, Dean Morris advertised the sale of the Property by mailing the Substituted Trustee's Notice of Sale (the "Sale Notice") (Adv. Dkt. 62-5 ¶ 4 & Ex. B) to the Clerk of the Hinds County Circuit Court for posting on the bulletin board at the courthouse.  Dean Morris also sent the Sale Notice to *The Clarion Ledger*, a local newspaper, for publication on three consecutive weeks beginning May 9, 2018.  (Adv. Dkt. 62-5 ¶ 5); MISS. CODE ANN. § 89-1-55.

Dean Morris held a non-judicial foreclosure sale of the Property on May 30, 2018.  (Adv. Dkt. 60 ¶ 3).  SNL was the highest and best bidder, and a deed conveying the Property to SNL was

filed in the land records.  (Adv. Dkt. 60 at 1; Bankr. Dkt. 64 at 2).  As of this date, the Debtor remains in possession of the Property.  (Hr'g at 10:18:44-10:19:52 (Jan. 9, 2019)).

On July 5, 2018, Cenlar and CMG filed the Motion for Relief from Automatic Stay and for Abandonment or Alternatively, for Adequate Protection (the "Cenlar/CMG Motion for Relief") (Bankr. Dkt. 64) in the Bankruptcy Case.[10]  They asked the Court to terminate the automatic stay provided by 11 U.S.C. § 362(a) and order the Property abandoned from the estate pursuant to 11 U.S.C. § 554(b).  They sought this relief in furtherance of the foreclosure sale to pursue state court remedies to evict the Debtor from the Property.  In the Response to Motion for Relief from Automatic Stay and for Abandonment or Alternatively, for Adequate Protection (the "Response to Cenlar/CMG Motion for Relief") (Bankr. Dkt. 68) filed on July 19, 2018, the Debtor denied that Cenlar and CMG were entitled to any relief and alleged that the foreclosure sale is void and should be canceled.

On July 20, 2018, the Debtor initiated the Adversary by filing the Complaint Seeking to Set Aside Foreclosure (the "Original Complaint") (Adv. Dkt. 1) alleging that the foreclosure was invalid and asserting the following causes of action against Cenlar, CMG, SNL, and John Does 1-5:  wrongful foreclosure; 11 U.S.C. § 547(b) and § 548(a) actions; negligence; and fraud.  The Debtor sought damages and attorneys' fees in an unspecified amount and a temporary restraining order prohibiting the defendants from taking possession of the Property.  On August 1, 2018, the Court modified the Confirmed Plan to remove the Proof of Claim (Bankr. Dkt. 73) in the Bankruptcy Case.

---

[10] SNL is listed as an additional movant in the Cenlar/CMG Motion for Relief, but SNL later filed a separate motion requesting the same relief.  (Bankr. Dkt. 86).  The Court considers the Cenlar/CMG Motion for Relief as having been amended to include only Cenlar and CMG as movants.

On August 20, 2018, Cenlar and CMG filed in the Adversary the Motion to Dismiss (the "First Motion to Dismiss") (Adv. Dkt. 13), alleging that the Original Complaint failed to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[11]   As to the Debtor's claims for wrongful foreclosure, negligence, and fraud, Cenlar and CMG alleged that the Original Complaint contained only conclusory statements which the U.S. Supreme Court has deemed insufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  They also challenged the Debtor's claims under 11 U.S.C. § 547(b) and § 548(a), on the ground the foreclosure sale complied with Mississippi law and, therefore, is not subject to avoidance. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 544 (1994); *see* (Adv. Dkt. 14).

The Debtor filed the Plaintiff's Response to Defendants' Motion to Dismiss (Adv. Dkt. 36), the Plaintiff's Memorandum of Authorities in Support of His Response to Motion to Dismiss ("Brief in Support of Response to First Motion to Dismiss") (Adv. Dkt. 37), and the Plaintiff's Motion for Leave to File First Amended Complaint (the "First Motion to Amend") (Adv. Dkt. 35). In the Brief in Support of Response to First Motion to Dismiss, the Debtor explained that the essence of his Original Complaint was CMG's and Cenlar's failure to comply with the notice provisions of the Deed of Trust.  (Adv. Dkt. 37 at 2).  The Debtor admitted that his Original Complaint "was not very detailed." (*Id.* at 5).  He filed the contemporaneous First Motion to Amend "to more clearly and specifically enumerate" his causes of action for breach of contract, negligence, and wrongful foreclosure.  (*Id.* at 2).  The Debtor attached to the First Motion to

---

[11] Rule 12(b)(6) is made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

Amend a copy of the proposed Frist [*sic*] Amended Complaint Seeking to Set Aside Foreclosure (the "First Proposed Amended Complaint") (Adv. Dkt. 35-1).

In the Bankruptcy Case, SNL filed the Motion to Lift Stay (the "SNL Motion for Relief") (Bankr. Dkt. 86) on November 15, 2018.  SNL asked the Court to terminate the stay to allow it to proceed with an eviction action against the Debtor.  On November 23, 2018, the Debtor filed the Response to Motion for Relief from Stay (the "Response to SNL Motion for Relief") (Bankr. Dkt. 90), asking the Court to deny the relief requested by SNL.  On November 29, 2018, the Court entered Orders Extending Automatic Stay (Bankr. Dkt. 94-95), pending resolution of the Cenlar/CMG Motion for Relief and the SNL Motion for Relief.

In the Adversary, Cenlar and CMG filed the Reply Memorandum in Support of Motion to Dismiss (the "Reply in Support of First Motion to Dismiss") (Adv. Dkt. 40).  They argued that the Debtor's "threadbear [*sic*] recital that notice did not comply with the Deed of Trust" in the First Proposed Amended Complaint did not cross the line to plausibility.  They pointed out that the Debtor had failed to attach to the First Proposed Amended Complaint either the Deed of Trust or the notices they purportedly sent the Debtor pursuant to the Deed of Trust.  They attached the following exhibits, *inter alia*, to the Reply in Support of First Motion to Dismiss:  (1) the Pre-Foreclosure Notice (Adv. Dkt. 40-2); (2) the FDCPA Notice (Adv. Dkt. 40-3); and (3) the December 13, 2017 Letter (Adv. Dkt. 40-4).  In the Response to Plaintiff's Motion for Leave to File First Amended Complaint (Adv. Dkt. 41), Cenlar and CMG asked the Court to deny the First Motion to Amend on the ground any amendment would be futile.  On November 26, 2018, the Debtor filed the Corrected Motion for Leave to File First Amended Complaint (the "Corrected Motion to Amend") (Adv. Dkt. 42) for the purpose of attaching a copy of the Deed of Trust as an

exhibit to the First Proposed Amended Complaint.  SNL filed the Joinder in Motion to Dismiss (Adv. Dkt. 43) on November 28, 2018.

On January 8, 2019, the day before the hearing on the First Motion to Dismiss and the Corrected Motion to Amend, the Debtor filed the Plaintiff's Second Amended Motion for Leave to File Amended Complaint (the "Second Motion to Amend") (Adv. Dkt. 57) to assert an additional cause of action for violation of the automatic stay arising out of the December 13, 2017 Letter.  The Debtor attached to the Second Motion to Amend the proposed Second Amended Complaint Seeking to Set Aside Foreclosure (the "Second Proposed Amended Complaint") (Adv. Dkt. 57-1).

After the hearing on the First Motion to Dismiss and the Second Motion to Amend, the Court entered the Order: (1) Consolidating Motions for Relief into Adversary; (2) Granting Plaintiff's Second Amended Motion for Leave to File Amended Complaint; (3) Setting Deadlines Related to Amendment of Motion to Dismiss; and (4) Setting Evidentiary Hearing on Amended Motion to Dismiss (Adv. Dkt. 59), finding that the allegations in the Second Proposed Amended Complaint were sufficient to support a plausible claim against Cenlar, CMG, and SNL regarding procedural shortcomings in the foreclosure process.  *See Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826 (S.D. Miss. 2011).  Because the Second Proposed Amended Complaint, however, contained certain typographical errors and inconsistencies in the prayer for relief and included "John Does 1-5" as defendants, who the Debtor apparently no longer intended to sue, the Court ordered the Debtor to file an amended complaint that corrected these mistakes and otherwise conformed to the remarks of the Court at the hearing on the First Motion to Dismiss and the Second Motion to Amend.  Moreover, the Court ordered the Debtor, Cenlar, CMG, and SNL to meet before the Debtor filed the amended complaint to determine whether the injunctive relief sought by the

Debtor in the Original Complaint could be resolved by agreement of the parties.  Also, the Court concluded that the issues regarding the validity of the foreclosure sale in the Bankruptcy Case and in the Adversary should be heard and adjudicated in a single proceeding and, therefore, consolidated the Cenlar/CMG Motion for Relief, the Response to Cenlar/CMG Motion for Relief, the SNL Motion for Relief, and the Response to SNL Motion for Relief filed in the Bankruptcy Case into the Adversary for all purposes pursuant to Rule 42 of the Federal Rules of Civil Procedure.[12]

On January 28, 2019, the Debtor filed the Amended Complaint alleging that Cenlar and CMG breached paragraphs 13 and 18 of the Deed of Trust by not providing him with personal notice of the foreclosure or the amount of money required to bring the mortgage current.  Based on these factual allegations, the Debtor asserts causes of action for wrongful foreclosure, breach of contract, negligence, and rescission of foreclosure.  In support of these causes of action, the Debtor attached a copy of the Deed of Trust (Adv. Dkt. 60-1) to the Amended Complaint.

The Debtor also contends in the Amended Complaint that the December 13, 2017 Letter— to the extent that Cenlar, CMG, and SNL maintain that it constituted proper notice of the foreclosure sale—was an attempt to collect a pre-petition debt that violated the automatic stay under 11 U.S.C. § 362(a).  As relief against CMG for its alleged violation of the automatic stay, the Debtor asks the Court to award the Debtor compensatory damages and attorneys' fees under 11 U.S.C. § 362(k).  In support of his stay-violation claim, the Debtor attached a copy of the December 13, 2017 Letter to the Amended Complaint.  (Adv. Dkt. 60-2).

---

[12] Rule 42 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7042 of the Federal Rules of Bankruptcy Procedure and to contested matters by Rule 9019 of the Federal Rules of Bankruptcy Procedure.

On February 11, 2019, Cenlar and CMG filed the Amended Motion to Dismiss[13] alleging that the Amended Complaint fails to state a claim upon which relief can be granted. In the alternative, Cenlar and CMG ask the Court to enter summary judgment in their favor based on the Stanley Declaration and the Price Declaration. They contend that the Pre-Foreclosure Notice and the FDCPA Notice, which they attached as exhibits to the Stanley Declaration and the Price Declaration, respectively, satisfied the foreclosure notice requirements in paragraphs 13 and 18 of the Deed of Trust. This contention in the Amended Motion to Dismiss differs from their argument in the First Motion to Dismiss that the December 13, 2017 Letter, as well as the Pre-Foreclosure Notice and the FDCPA Notice, complied with the Deed of Trust.

SNL filed the SNL Joinder in Amended Motion to Dismiss and the SNL Brief on February 11, 2019. In the SNL Brief, SNL incorporates by reference the arguments of Cenlar and CMG and, in addition, maintains that the Reinstatement Order had no effect on the foreclosure sale. The Debtor filed the Response to Amended Motion to Dismiss and Debtor's Brief on February 25, 2019. The Debtor did not submit a sworn affidavit or declaration in opposition to the Amended Motion to Dismiss. Cenlar and CMG filed the Reply in Support of Amended Motion to Dismiss on February 28, 2019. The Hearing on the Amended Motion to Dismiss and the SNL Joinder in Amended Motion to Dismiss was held on March 6, 2019.

**Discussion**

**A.      Amended Motion to Dismiss**

In lieu of filing an answer to the Amended Complaint, Cenlar and CMG filed the Amended Motion to Dismiss, arguing that the Debtor has failed to state a claim upon which relief can be

---

[13] Although the caption of the Amended Motion to Dismiss includes "John Does 1-5"as defendants, those unnamed defendants do not appear in the caption of the Amended Complaint.

granted pursuant to Rule 12(b)(6).  As alternative relief to the dismissal of the Amended Complaint, they ask the Court to enter summary judgment in their favor.  (Adv. Dkt. 62 at 2 n.1). To that end, Cenlar and CMG attached exhibits to the Amended Motion to Dismiss that were not filed by the Debtor with the Amended Complaint.

A motion made under Rule 12(b)(6) that asks a court to consider "matters outside the pleadings . . . must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Such a conversion, however, must provide "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the" converted motion for summary judgment. *Id.* The Court finds that the framing of the Amended Motion to Dismiss in the alternative as one for summary judgment provided such an opportunity to the Debtor. *Tremont LLC v. Haliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 853 (S.D. Tex. 2010).  The Court, therefore, will consider the Amended Motion to Dismiss as a motion for summary judgment and not as a Rule 12(b)(6) motion to dismiss.

## B.    Summary Judgment Standard

Rule 56 provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is looked upon as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations & quotations omitted).   Summary judgment is properly entered when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(1)(A); *see also Celotex*, 477 U.S. at 322.

The initial burden of proof is on the movant to specify the basis upon which summary judgment should be granted and identify portions of the record that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1); *see also Celotex*, 477 U.S. at 322. Under Rule 56, there is no burden on the movant "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Celotex*, 477 U.S. at 325. Instead, the movant may meet its burden by pointing out to the court "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the movant's initial burden is met, the burden of production shifts to the nonmovant who then must come forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations & quotations omitted); *see United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Moreover, "conclusory allegations" or "unsubstantiated assertions" do not meet the nonmovant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Additionally, "a mere scintilla of evidence will not preclude granting of a motion for summary judgment." *Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x 414, 417 (5th Cir. 2016). Summary judgment should be granted, after adequate time for discovery, against a nonmovant who "has failed to make a sufficient showing on an essential element of [the] case with respect to which [the party] has the burden of proof." *Celotex*, 477 U.S. at 323.

C.      **Wrongful Foreclosure-Related Claims**

A deed of trust conveys title to real property to a trustee as security for repayment of a loan. 6 ENCYCLOPEDIA OF MISSISSIPPI LAW § 51:3 (2d ed. 2017).  A deed of trust generally contains power of sale language that gives the lender the option to follow the foreclosure procedures outlined in the deed of trust and state law.  Under Mississippi law, "[a] foreclosure under the power of sale is properly conducted if the constitutional, statutory, and contractual requirements entered into by the parties are met."  *Lake Hillsdale Estates, Inc. v. Galloway*, 473 So. 2d 461, 465 (Miss. 1985).  A wrongful foreclosure occurs when a foreclosure is attempted solely for a malicious desire to injure the mortgagor, or the foreclosure is conducted negligently or in bad faith to the mortgagor's detriment.  *Nat'l Mortg. Co. v. Williams*, 357 So. 2d 934, 935-36 (Miss. 1978); *see Stewart v. GMAC Mortg., LLC*, Civil Action No. 2:10-cv-00149-DCB-JMR, 2011 WL 1296887, at *12, n.4 (S.D. Miss. Mar. 31, 2011) ("[T]here appears to be an open question under Mississippi law regarding whether a wrongful foreclosure claim can arise out of 'improper execution of a rightful foreclosure'.").

The Debtor contends that the foreclosure sale was invalid because neither Cenlar nor CMG provided new notice of the foreclosure sale after the dismissal of the Bankruptcy Case.  He labels his causes of action as claims for wrongful foreclosure, breach of contract, negligence, and rescission of foreclosure.  The Debtor's principal arguments are that "equity and good conscience" required Cenlar and CMG to provide new notice of the foreclosure under Mississippi law, that the intervening Bankruptcy Case de-accelerated the Note, and, finally, that due process required Cenlar and CMG to provide new notice.  The Court considers whether Cenlar and CMG satisfied the statutory and contractual notice provisions before turning to these arguments.

### 1.    Notice of Foreclosure under Mississippi Law and the Deed of Trust

In Mississippi, the statutory process for a non-judicial foreclosure sale does not require the mortgagee to notify the mortgagor directly of an impending foreclosure. *EB, Inc. v. Allen*, 722 So. 2d 555, 561 (Miss. 1998). Mississippi law requires only that a notice of the sale be posted in the courthouse of the county where the land is situated and that a notice of the sale be published in a paper of general circulation for three consecutive weeks. Miss. Code Ann. § 89-1-55. The Debtor does not dispute that, by posting a notice of sale on the bulletin board in the Hinds County Courthouse and by publishing the notice of sale in *The Clarion Ledger* for three consecutive weeks, Dean Morris complied with the requirements of Mississippi law with respect to the manner in which it proceeded with the foreclosure sale on behalf of CMG.

Even though personal notice of a foreclosure sale is not required by Mississippi law, the Mississippi Supreme Court has recognized that parties may contract for such notice in the note and deed of trust. *EB, Inc.*, 722 So. 2d at 561. Here, paragraph 18 of the Deed of Trust required CMG to notify the Debtor of its intent to sell the Property. Cenlar and CMG contend that the FDCPA Notice and the Pre-Foreclosure Notice supplied the Debtor with the extra-statutory notice required by that provision. They point out that the FDCPA Notice is nearly identical to the letter examined by the U.S. District Court for the Southern District of Mississippi in *Pennell v. Wells Fargo Bank, N.A.*, No. 1:10-cv-00582-HSO-JMR, 2012 WL 2873882 (S.D. Miss. July 12, 2012), and found to be sufficient to satisfy the same notice provision. *Compare* (Adv. Dkt. 62-5, Ex. A), *with Pennell v. Wells Fargo Bank, N.A.*, No. 1:10-cv-00582-HSO-JMR (Adv. Dkt. 57-3) (Feb. 9, 2012).

At the Hearing, counsel for the Debtor argued that *Pennell* is factually distinguishable because the letter in *Pennell* preceded the foreclosure sale by four (4) months whereas the FDCPA Notice preceded the foreclosure sale by more than eleven (11) months because of the intervening

Bankruptcy Case. There is no provision in the Deed of Trust, however, that required CMG to give notice to the Debtor within a specified period of time before the foreclosure sale. And the Debtor cites no legal authority in support of his position that notice of a foreclosure sale becomes stale after a certain period of time.

Notably, there is no evidence in the record that either Cenlar or CMG engaged in conduct during the pendency of the Bankruptcy Case that might be construed as an abandonment, waiver, revocation, or rescission of the earlier acceleration of the Note's maturity date. Rather, their conduct was consistent with their continued reliance on the earlier FDCPA Notice from Dean Morris. Based on *Pennell*, the Court finds that the FDCPA Notice establishes that CMG provided the extra-statutory notice to the Debtor sufficient to satisfy paragraphs 13 and 18 of the Deed of Trust.

### 2.    "Equity and Good Conscience"

Even assuming that CMG provided adequate notice of the foreclosure under paragraph 18 of the Deed of Trust, the Debtor argues that "equity and good conscience" required Cenlar and CMG to provide personal notice of the date of the rescheduled foreclosure sale to the Debtor after the dismissal of the Bankruptcy Case. (Adv. Dkt. 67 at 4). In support of his request for equitable relief, the Debtor points out that the non-judicial foreclosure sale was held during the "gap" period between the dismissal and the reinstatement of the Bankruptcy Case.[14] The Debtor questions why

---

[14] The Debtor does not argue that the automatic stay was in effect when the foreclosure sale took place or that reinstatement of the dismissed Bankruptcy Case retroactively reimposed the automatic stay. *Frank v. Gulf States Fin. Co. (In re Frank)*, 254 B.R. 368 (Bankr. S.D. Tex. 2000). Moreover, the Debtor does not contend that the filing of the Motion to Reinstate extended the time that the Bankruptcy Case was pending. *See In re Lundquist*, 371 B.R. 183, 190 (Bankr. N.D. Tex. 2007).

Cenlar and CMG resumed the foreclosure process when they knew that he had filed the Motion to Reinstate and, therefore, that he had not "abandoned" the Bankruptcy Case.

The Debtor relies on *Morgan v. Linham*, 86 So. 2d 473 (Miss. 1956), where the Mississippi Supreme Court created an equitable exception to the statutory notice provisions of Mississippi's foreclosure law. There, however, the owner of the property disputed whether the mortgage was in default at the time of the non-judicial foreclosure sale, the purchase price was grossly inadequate, and the owner was waiting for an officer of the mortgagee to examine his receipts, which eventually showed that the loan balance was only $65.00.

In *Morgan*, Laurel Federal Savings & Loan Association ("Savings & Loan") loaned $1,100.00 for the purchase of residential property. *Id.* at 473-74. Repayment of the loan was secured by a deed of trust on the property. Prentiss Linham ("Linham") became the owner of the property after a series of deaths and conveyances, but he never expressly assumed the mortgage. *Id.* at 474. Nevertheless, Linham took possession of the property and during the next two years paid approximately $700.00 toward the mortgage. When he believed the mortgage had been paid in full, he delivered forty-nine (49) receipts, as proof of his full payment, to Curtis Jones ("Jones"), vice-president and secretary of the Savings & Loan. Unfortunately, Jones suffered a heart attack and was confined in a hospital in Chicago for a few weeks. During Jones's hospitalization, the Savings & Loan sold the residence to John Morgan ("Morgan") for $510.00 pursuant to a published notice of the foreclosure sale that complied with Mississippi law. Linham, who could not read and claimed he had no actual knowledge of the foreclosure sale, sued Morgan in the Chancery Court of Jones County, Mississippi, seeking to set aside the foreclosure sale. *Id.* at 475.

At trial, the chancellor found that at the time of the foreclosure, the value of the residence was between $3,750.00 and $4,000.00, but was sold for only $510.00, and the balance of the

mortgage was only $65.00.  The chancellor ruled that the gross inadequacy of consideration, coupled with Linham's unsuccessful efforts to determine the amount of the mortgage, warranted setting aside the foreclosure sale.  On appeal, the Mississippi Supreme Court affirmed.  Although the Mississippi Supreme Court found that Linham was not entitled to personal notice of the foreclosure sale under the statute, it ruled that he was entitled to such notice "as a matter of equity and good conscience" since his default and the consequent loss of his residence was due in large part to the illness of Jones who was unable to advise him prior to the foreclosure sale of the true amount of the mortgage.

*Morgan* is factually distinguishable.  The Debtor's default at the time of the foreclosure sale was undisputed, and the Debtor does not allege that CMG or Cenlar acted unconscionably or inequitably so as to cause the Debtor to default on his mortgage by, for example, failing to inform him of the true amount of the arrearage.  *Cf. Williams*, 357 So. 2d at 935-36 (finding first foreclosure sale wrongful because the borrower was not actually in default and finding second foreclosure, started days after the first foreclosure was set aside, also wrongful, in part, because the lender never provided the borrower with an accounting of the amount actually owed).  The facts here more closely resemble those in *EB, Inc.* where the Mississippi Supreme Court rejected an argument similar to the Debtor's and held that no extra-statutory notice was necessary.  *EB, Inc.*, 722 So. 2d at 561

In *EB, Inc.*, Eastover Bank for Savings ("Eastover Bank"), the predecessor of EB, Inc., determined that a subordination agreement on a loan that had matured in September 1992 was defective.  *Id.* at 558.  The loan was secured by a deed of trust on 100 acres of land owned by Paul Allen ("Allen").  *Id.* at 557.  A bank manager wrote letters in October 1992 and December 1992 advising Allen that he must pay the loan balance or obtain another subordination agreement and

renew the loan.  *Id.* at 558.  Allen's attorney wrote Eastover Bank advising that he would obtain a subordination agreement but for reasons beyond his control was not able to do so.  Eastover Bank proceeded with a foreclosure sale in February 1993 without giving either Allen or his attorney personal notice.  Allen sued Eastover Bank, arguing that the foreclosure was improper in the absence of such notice.

At trial, the chancellor ruled in favor of Allen, holding that Eastover Bank was obligated to give personal notice of the foreclosure to Allen and his attorney under these facts where Eastover Bank was in the process of combining its assets with Sunburst Bank and, in his view, where it proceeded with the foreclosure sale in haste.  *Id.* at 560.  On appeal, the Mississippi Supreme Court reversed the chancellor's holding.  Although the Mississippi Supreme Court agreed that Eastover Bank was attempting to work with Allen to renew the loan before the foreclosure sale, it was undisputed that Allen was in default.  As such, Eastover Bank had full authority to foreclose on its deed of trust and properly did so pursuant to Mississippi law, which did not require that Eastover Bank give personal notice to Allen or his attorney.  *Id.* at 562.

As in *EB, Inc.*, the Debtor's default is undisputed, and the foreclosure sale complied with Mississippi law and the Deed of Trust.  In the absence of any inequitable or unconscionable conduct by Cenlar or CMG, the Mississippi Supreme Court places the burden on the Debtor to keep himself apprised of the status of the foreclosure.  If the Debtor had done so, he could have stopped the foreclosure sale either by paying the amount of the installment then due (with all accrued costs, attorneys' fees and trustee's fees on the amount actually past due) or reinstating the Bankruptcy Case.  *See* Miss. Code Ann. § 89-1-59.  The foreclosure sale, however, took place before entry of the Reinstatement Order because of the Debtor's delay in bringing his plan payments current.  *See Last Will & Testament of Winding v. Estate of Winding*, 783 So. 2d 707,

711 (Miss. 2001) ("[E]quity aids the vigilant and not those who slumber on their rights.") (citations & quotations omitted).

### 3.      "De-Acceleration" of the Note under the Bankruptcy Code

At the Hearing, counsel for the Debtor suggested that confirmation of the Plan "de-accelerated" the Note but that CMG failed to provide new notice of its intent to "re-accelerate" the Note and invoke the power of sale after the dismissal of the Bankruptcy Case. Counsel's argument rests on the Confirmed Plan's treatment of the mortgage under 11 U.S.C. § 1322(b)(5), which requires a brief discussion.

Under 11 U.S.C. § 1322(b)(5), a debtor may cure any pre-petition default on a long-term mortgage and maintain ongoing mortgage payments in a chapter 13 plan, as follows:

(b)      Subject to subsections (a) and (c) of this section, the plan may—

*   *   *

(5)      notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(5). As long as the debtor pays the amount necessary to cure the pre-petition default and to maintain the mortgage pursuant to the original payment schedule under a chapter 13 plan, the pre-petition acceleration of the note is ignored. Bankruptcy courts sometimes refer to this use of 11 U.S.C. § 1322(b)(5) as the "de-acceleration" or "deceleration" of a mortgage through a chapter 13 plan, but the term "de-acceleration" or "deceleration" does not appear in the Bankruptcy Code. *See, e.g.*, *In re Dixon*, 151 B.R. 388, 390-92 (Bankr. S.D. Miss. 1993).

Like many other homeowners, the Debtor responded to the threat of foreclosure by commencing the Bankruptcy Case and invoking the cure and maintenance provisions of 11 U.S.C. § 1322(b)(5) in the Confirmed Plan. Debtor's counsel asks the Court to treat the "de-acceleration"

of the Note under the Bankruptcy Code the same as the reinstatement of the Note under Mississippi law. Under § 89-1-59 of the Mississippi Code, payment "of the amount of the note or installment then due or past due by its terms . . . , rather than the amount accelerated," reinstates the amount accelerated "the same as if such amount not due by its terms had not been accelerated or put in default." *See Weems v. Transamerica Mortg. Co.*, 770 So. 2d 936, 939 (Miss. 2000) (recognizing that the Mississippi legislature enacted § 89-1-59 of the Mississippi Code as "a safety net for debtors laboring under acceleration clauses"). To reinstate the Note and mortgage, the Debtor would have had to pay Cenlar/CMG the lump sum of at least $9,147.38 to bring the Note and mortgage current. MISS. CODE ANN. § 89-1-59; *Kaiser Invs., Inc. v. Davis*, 538 So. 2d 427, 429 (Miss. 1989). The Confirmed Plan, however, did not propose to pay CMG the mortgage arrearage of $9,147.38 in lump sum but to pay this amount in monthly installments. In that regard, 11 U.S.C. § 1322(b)(5), requires only that a chapter 13 plan provide for the curing of any default within a "reasonable time," and the U.S. Court of Appeals for the Fifth Circuit has held that a debtor, with court approval, could cure past due amounts secured by a home mortgage during the entire term of a chapter 13 plan. *Grubbs v. Houston First Am. Savs. Ass'n*, 730 F.2d 236, 237 (5th Cir. 1984). Here, the Confirmed Plan allows the Debtor to cure the mortgage arrearage over sixty (60) months. For this reason, bankruptcy courts have recognized that "there are essential differences between a contractual mortgage reinstatement and the statutory cure right afforded by [11 U.S.C.] § 1322(b)(5) of the Bankruptcy Code." *In re Tudor*, 342 B.R. 540, 563 (Bankr. S.D. Ohio 2005). "[D]eceleration of a previously accelerated loan and cure of arrearages in that obligation, when compelled by the provisions of a debtor's Chapter 13 plan, do not constitute a voluntary process of reinstatement." *In re Seibel*, 82 B.R. 463, 465 (Bankr. S.D. Ohio 1987).

Regardless, it is undisputed that the Debtor never cured the default that precipitated acceleration of the Note and, therefore, never had the statutory right to reinstate the Note.

Finally, to require notice of the foreclosure sale in addition to the noticing requirements of Mississippi law would violate the fundamental principal of bankruptcy law that dismissal of a bankruptcy case returns parties to the *status quo ante*. Under 11 U.S.C. § 349(b)(3), the effect of the Dismissal Order was to revest all property of the estate in the entity in which the property was vested immediately before commencement of the Bankruptcy Case. *See Christie v. First State Bank of Stratford (In re Keener)*, 268 B.R. 912 (Bankr. N.D. Tex. 2001). The legislative history of 11 U.S.C. § 349 indicates that the drafters intended for the dismissal of a bankruptcy case to "undo the bankruptcy case, as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case." H. Rep. No. 95-595, at 338 (1977); S. Rep. No. 95-989, at 48-49 (1978), *reprinted in* U.S.C.C.A.N. 5787, 5835, 6294. Accordingly, CMG's remedies under the pre-petition acceleration applied upon the dismissal of the Bankruptcy Case.

### 4.   Due Process Considerations

As for due process concerns, the majority rule is that statutory foreclosure sale procedures do not constitute "state action" as to invoke the protections of the due process clause of the Fourteenth Amendment. *Leininger v. Merchants & Farmers Bank*, 481 So. 2d 1086, 1090 (Miss. 1986). The power of sale is a private action authorized by contract based on the language of the deed of trust itself and does not depend on a statute for its validity. Mississippi's foreclosure laws merely regulate the procedure by which that contractual remedy is carried out. *Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 1166, 1170 (5th Cir. 1975) (reviewing similar Texas statute).

### D.     Cenlar/CMG Motion for Relief & SNL Motion for Relief

The Debtor remains in possession of the Property.  Upon reinstatement of the Bankruptcy Case, the Debtor's possessory right became property of the bankruptcy estate and has been protected by the automatic stay since then.  Under Mississippi law, a valid foreclosure sale cuts off the borrower's rights of redemption and "any other rights in and to the property (all of which are transferred to the foreclosure sale proceeds)."  *Peoples Bank & Tr. Co. v. L&T Developers*, 434 So. 2d 699, 708 (Miss. 1983).  Because the Debtor has no rights in the Property other than his possession of the Property, cause exists to terminate the automatic stay under 11 U.S.C. § 362(d)(1).  Accordingly, the Court finds that the Cenlar/CMG Motion for Relief and the SNL Motion for Relief should be granted.

### E.     Stay-Violation Claim

The Debtor alleges in the Amended Complaint that CMG violated the automatic stay, 11 U.S.C. § 362(a)(6), by sending the Debtor's counsel the December 13, 2017 Letter after the commencement of the Bankruptcy Case.  Upon the filing of a bankruptcy petition, "an automatic stay operates as a self-executing injunction" that prevents creditors from pursuing collection efforts against the debtor or the property of the debtor's estate for pre-petition debts.  *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008).  The stay is automatic and springs into being immediately upon the filing of a bankruptcy petition in a voluntary bankruptcy case.  *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 343-44 (5th Cir. 2003) (citations & quotations omitted).  The purpose behind the automatic stay is to allow a debtor "breathing room" and a chance for a fresh start.  *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005).  Should the automatic stay be violated, Congress has provided a debtor with a private right of action for any "willful" violation.  "[A]n individual injured by any willful

violation of a stay provided by this section shall recover actual damages . . . and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The Fifth Circuit has set forth a three-part test for establishing an actional violation of the stay under 11 U.S.C. § 362(k): (1) the entity must have known of the existence of the stay; (2) the entity's acts must have been intentional; and (3) the entity's acts must have violated the automatic stay. *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). As to the first and second elements, it is undisputed that CMG knew about the Bankruptcy Case when it sent the December 13, 2017 Letter to the Debtor's counsel. Only the third element is in dispute.

According to the Debtor, because he "was in an active chapter 13 proceeding" on December 13, 2017, when "the initiation and continuing of collection actions were prohibited," CMG violated the automatic stay "to the extent [they] claim [the December 13, 2017 Letter] is notice of foreclosure or notice of acceleration as required by the deed of trust" (Adv. Dkt. 60 ¶ 39). Cenlar and CMG describe the December 13, 2017 Letter as merely a letter sent to the Debtor's counsel to inform the Debtor of loss-mitigation options concerning the Property. (Adv. Dkt. 62 at 8). They cite *United States ex rel. Farmers Home Administration v. Nelson*, 969 F.2d 626 (8th Cir. 1992), for the proposition that communications regarding a borrower's loss-mitigation options do not violate the automatic stay.

In *Nelson*, the U.S. Court of Appeals for the Eighth Circuit held that Farmers Home Administration ("FmHA") did not violate the automatic stay by sending to the debtors' counsel a letter titled "Notice to Borrower's Attorney Regarding Loan Servicing Options" (the "FmHA Letter"). *Id.* at 630. The FmHA sent the FmHA Letter to comply with regulations promulgated by the Secretary of Agriculture "for dealing with an FmHA borrower who becomes a debtor in bankruptcy." *Id.* at 629. The body of the letter discussed the automatic stay and informed debtor's

counsel that "[u]nless the automatic stay is modified . . . or the case is dismissed, FmHA will not discuss any of the servicing options with you or your client." *Id.* at 630. In the absence of a motion modifying the stay filed within 45 days, "we will assume that your client does not intend to make a request for servicing, and we will proceed to protect our interest, as allowed by the Bankruptcy Code." *Id.* The Eighth Circuit noted that the FmHA did not send the letter to the debtors directly, but to their counsel who it presumed would know bankruptcy law and not be intimidated by its content. *Id.* The Eighth Circuit found it significant that the FmHA acknowledged in the FmHA Letter that it may be restricted by the automatic stay from contacting the debtors directly regarding any loan servicing options. *Id.*

The Court agrees that the FmHA Letter in *Nelson* is similar to the December 13, 2017 Letter in many ways. The December 13, 2017 Letter was sent to the Debtor's counsel, not directly to the Debtor. "[W]e will deal directly with you" unless we receive a letter from you "giving us permission to discuss the loss mitigation options with [the Debtor]." (Adv. Dkt. 60-2). The December 13, 2017 Letter mentions the Bankruptcy Case and lists three loss-mitigation options that may be available to the Debtor to avoid foreclosure: (1) loan modification; (2) sale of the Property; and (3) a deed in lieu of foreclosure. (*Id.*). Moreover, like the FmHA Letter, the December 13, 2017 Letter does not set forth the amount due, request payment, require any immediate action, or threaten any "action or proceeding against the [D]ebtor." 11 U.S.C. § 362(a)(1). The Court, however, finds enough differences between the FmHA Letter and the December 13, 2017 Letter to render the holding in *Nelson* inapplicable for reasons other than it does not constitute binding authority.

The FmHA Letter includes important language that is missing from the December 13, 2017 Letter. Whereas there is transparency in the FmHA Letter regarding restrictions arising from the

automatic stay, the December 13, 2017 Letter does not mention the automatic stay or recognize that the commencement of the Bankruptcy Case precluded CMG from proceeding with the then pending foreclosure sale.  Moreover, the December 13, 2017 Letter fails to mention any alternative to foreclosure available to the Debtor under chapter 13.  To the contrary, the first sentence of the December 13, 2017 Letter suggests that the foreclosure of the Property is a foregone conclusion of the Bankruptcy Case unless the Debtor chooses one of three loss-mitigation options. "[N]otwithstanding the bankruptcy of the above borrower(s), there may be relief available to help them avoid foreclosure."  (Adv. Dkt. 60-2).  Yet debtors often file bankruptcy cases under chapter 13 for the express purpose of saving their homes from foreclosure under the cure and maintenance provisions of 11 U.S.C. § 1322(b)(5).  *See* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY § 129.1 (4th ed. 2004), www.Ch13online.com.  Here, the Debtor attempted to do just that by proposing to pay the mortgage arrearage in monthly installments through the Confirmed Plan.

Finally, unlike the purpose of the FmHA Letter, the purpose of the December 13, 2017 Letter is unclear.  The FmHA Letter was sent to comply with federal regulations.  When questioned at the Hearing, however, counsel for CMG was unable to answer whether the December 13, 2017 Letter and its contents were necessary to comply with any federal law or regulation.[15]

The automatic stay does not protect the Debtor from all communications with Cenlar and CMG but only communication that threatens "any act to collect, assess, or recover" a pre-petition debt.  11 U.S.C. § 362(a)(6).  When Congress enacted 11 U.S.C. § 524(j) in 2005, it recognized

---

[15] The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617; Regulation X, 12 C.F.R. § 1024.39(a); the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f; and the FDCPA, for example, impose numerous requirements on lenders to disclose information to mortgage loan borrowers.

that there are valid reasons for a lender to communicate information about a mortgage that have nothing to do with attempting to collect it. *Todt v. Ocwen Loan Servicing, LLC (In re Todt)*, 567 B.R. 667, 677, 680 & n.8 (Bankr. D.N.H. 2017). Under that "safe harbor" provision, post-discharge loan servicing communications are not enjoined by the discharge injunction if: (1) they are made by a creditor with a security interest on the debtor's principal residence; (2) they are made in the ordinary course of business between the creditor and the debtor; and (3) they are limited to "seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." 11 U.S.C. § 524(j).

The enactment of 11 U.S.C. § 524(j) demonstrates that the communication of information regarding a mortgage is not an "act to collect" a pre-petition debt in violation of the automatic stay if there is a valid purpose in communicating that information and if the communication is informational only. A communication that appears to serve a valid informational purpose, however, may violate the stay if it is not limited to that purpose, overtly demands payment, or has the effect of inviting or coercing payment. *See Connor v. Countrywide Bank, N.A. (In re Connor)*, 366 B.R. 133, 137-38 (Bankr. D. Haw. 2007).

The Court finds that the December 13, 2017 Letter, taken as a whole, is informational in nature and not a collection letter that violates the automatic stay. The December 13, 2017 Letter consists of only two pages, does not overtly demand payment, does not attempt to coerce payment, serves a valid informational purpose, and was not sent directly to the Debtor, but to the Debtor's counsel. Moreover, the December 13, 2017 Letter is a single communication from CMG that was not preceded by a request to cease contact with the Debtor and his counsel. Much of the Court's analysis could have been curtailed if the December 13, 2017 Letter had contained a simple disclaimer similar to the language in the FmHA Letter.

Finally, it is not lost on the Court that the Debtor did not consider the December 13, 2017 Letter a stay violation until after Cenlar and CMG filed the First Motion to Dismiss. Cenlar and CMG argued in the First Motion to Dismiss that the December 13, 2017 Letter, along with the Pre-Foreclosure Notice and the FDCPA Notice, satisfied the notice requirements in the Deed of Trust. The Debtor apparently added the stay-violation claim to preclude Cenlar and CMG from relying on the December 13, 2017 Letter as proof that it complied with the notice provisions in the Deed of Trust. That strategy worked. In the Amended Motion to Dismiss, Cenlar and CMG rely solely on the Pre-Foreclosure Notice and the FDCPA Notice as evidence that they provided proper notice of the foreclosure sale. Because the Amended Complaint asserts a stay-violation claim only "to the extent the Defendants claim this letter is notice of foreclosure or notice of acceleration as required by the deed of trust" (Adv. Dkt. 60 at 6) and because Cenlar and CMG did not rely on the December 13, 2017 Letter for that purpose in the Amended Motion to Dismiss, the Court could dismiss the stay-violation claim on that basis alone.

## Conclusion

For the above reasons, the Court finds that there are no genuine issues of material fact and Cenlar, CMG, and SNL are entitled to summary judgment on the Debtor's wrongful foreclosure-related claims and his stay-violation claim. Accordingly, the Court finds that the Amended Motion to Dismiss and the SNL Joinder in Amended Motion to Dismiss should be granted. In addition, the Court finds that the Cenlar/CMG Motion for Relief and the SNL Motion for Relief should be granted. The Court will enter a separate final judgment in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##